UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DANNA ST JOHN and LUIS PENUELA, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>KELLER WILLIAMS REALTY, INC., a Texas corporation,<br><br>          Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Danna St John ("Plaintiff St John" or "St John") and Plaintiff Luis Penuela ("Plaintiff Penuela" or "Penuela") bring this Class Action Complaint and Demand for Jury Trial against Defendant Keller Williams Realty, Inc. ("Defendant" or "Keller Williams") to stop Keller Williams from directing its realtors to violate and/or ratifying its realtors' violations of the Telephone Consumer Protection Act by making unsolicited, prerecorded and autodialed calls to consumers *without their consent*, including calls to consumers registered on the National Do Not Call registry, and to otherwise obtain injunctive and monetary relief for all persons injured by Keller Williams' conduct. Plaintiff St John and Plaintiff Penuela for their Complaint, allege as follows upon personal knowledge as to themselves and their owns acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**INTRODUCTION**

1.     Keller Williams is one of the largest real estate franchises in the world.

2.     Keller Williams differentiates itself from other real estate franchises through its training and coaching programs, through which Keller Williams directs the activities of its realtors, including their marketing efforts.  In fact, "Gary Keller has often said that Keller

1

Williams is 'a training and coaching company that also happens to be in the business of real estate.'"[1]

3.      As a result, in 2015, Training Magazine recognized Keller Williams "as the world's #1 training organization across all industries."[2]  And, both before and since then, Keller Williams has consistently placed in the Top 5 on the Training 125, which ranks companies' excellence in employer-sponsored training and development programs.[3]

4.      Relevant here, for the last several years, a key component of Keller Williams' marketing plan for realtors instilled through its award winning training and coaching programs has been for realtors to purchase lists of potential leads for real estate listings from lead provider companies such as Landvoice Data LLC ("Landvoice") or RedX, companies that generate personal phone numbers associated with expired listings on the multiple listing service ("MLS), including phone numbers registered on the National Do Not Call Registry, and which provides a web-hosted autodialer for realtors to make marketing calls *en masse* to those numbers without the recipients' consent.

5.      In Plaintiff St John's case, Keller Williams' marketing plan, involving leads from companies such as Landvoice resulted in over 15 unsolicited calls, including autodialed and prerecorded calls by or on behalf of Keller Williams to Plaintiff's cellular telephone number that is registered on the DNC.

6.      In Plaintiff Penuela's case, Keller Williams' marketing plan, involving leads from companies such as Landvoice resulted in over 8 unsolicited calls by or on behalf of Keller Williams to Plaintiff's cellular telephone number that is registered on the DNC, including at least one autodialed text message that Plaintiff Penuela received.

7.      In response to these calls, Plaintiff St John and Plaintiff Penuela file this lawsuit seeking injunctive relief requiring Defendant to cease directing its realtors to violate and/or

---

[1] From the Keller Williams Education website, available at, http://www.kw.com/kw/education.html (last accessed March 28, 2018).

[2] KW Maps Coaching, available at, http://mapscoaching.kw.com/coaches/dianna-kokoszka.

[3] https://blog.kw.com/keller-williams-named-top-training-organization-worldwide

ratifying its realtors' violations of the Telephone Consumer Protection Act by placing

unsolicited calls to consumers' cellular telephone numbers using prerecorded messages and an

automatic telephone dialing system and otherwise calling telephone numbers registered on the

DNC, as well as an award of statutory damages to the members of the Classes and costs.

## PARTIES

8.      Plaintiff Danna St John is, and at all times relevant to the complaint was, a

resident of Saint Cloud, Florida.

9.      Plaintiff Luis Penuela is, and at all times relevant to the complaint was, a

resident of Orlando, Florida.

10.     Defendant Keller Williams is a Texas corporation headquartered at 1221 South

Mopac Expressway Suite 400, Austin, Texas 78746.  Defendant conducts business throughout

this District and the United States.

## JURISDICTION AND VENUE

11.     This Court has federal question subject matter jurisdiction over this action under

28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C.

§227 ("TCPA").

12.     This Court has personal jurisdiction over Defendant and venue is proper in this

District under 28 U.S.C. § 1391(b) because Defendant resides in this District, does significant

business in this District and the state of Texas, and because the wrongful conduct giving rise to

this case was directed from and/or occurred in this District.

## COMMON ALLEGATIONS

**Keller Williams Directs and/or Ratifies Their Realtors' Purchases of Lists of Leads from Lead Providers and Calls to Them Without Consent**

13.     Keller Williams' marketing plan directs realtors to use certain prescribed

practices to market Keller Williams' realty services, including unsolicited, prerecorded and

autodialed calls to cellular telephone numbers and other telephone numbers registered on the

DNC.  Keller Williams impresses its marketing plan on its network of realtors through its

coaching and training programs, during national events like the Keller Williams Mega Camp and Keller Williams Family Reunion, and through courses and materials offered by Keller Williams University and KW MAPS (Keller Williams Mega Achievement Productivity Systems).

**Keller Williams Recommends Calling Expired Listings as Part of Their Marketing Plan**

14.     Keller Williams encourages realtors to call property owners generated from expired listings on the MLS.

15.     In fact, Keller Williams promotes an "Expired Script" to Keller Williams realtors that it encourages its realtors to use to market to consumers who have expired listings.[4]

16.     Keller Williams also provides training videos to all of its realtors through KWconnect.com, some of those videos teach agents how to call expired listings.

17.     For example, in the video on KWConnect.com "Does Cold Calling Expired Listings Even Work? (The Truth), the Keller Williams trainer in the video states that "they [the consumer] get mad after the 3rd or 4th call before 8:30am."[5] He goes on to imitate a consumer stating "You're the 16th caller this morning. You are not up against those 16 other people, you may only be up against 2 or 3 because the 2 or 3 know how to respond to that and…get the appointment…and get the listing."[6]

18.     In addition, Defendant provides a video to their realtors on KWConnect.com called "LIVE Cold Call (+Expired Listing Appointment Set)"[7] where the trainer demonstrates how he calls consumers with expired listings and he shows how he tries to convince the consumer to meet with him even though the consumer on that call informed the agent that she already has an agent for the property.[8]  The trainer of that video also mentioned in the video that "I've talked to a lot of wrong numbers depending on our lead source, that will happen."

---

[4] https://www.theredx.com/blog/10-golden-expired-scripts-to-list-more-properties/
[5] https://www.kwconnect.com/search?q=expired+script
[6] Id.
[7] https://www.youtube.com/watch?v=n0_9sYpNKYo
[8] https://www.kwconnect.com/search?q=expired+script

19.     In another video available to all Keller Williams realtors on KWConnect titled "Expired Listing Lead Generation & Prospecting" by Dustin Nulf[9] the trainer shows the structure of his expired listings marketing. He details how one of his administrators will look for expired listings on the MLS, look up the owner information for that property, he uses a service called MOJO "to pull expired and For Sale by Owner data from the Internet everyday and that data is loaded into our CRM and our agents can then call those expired listings."  He goes on to say "The key is to be consistent…we've doing this stuff for 8 or 9 years now and that's how you build a consistent pipeline of listings."

20.     In addition, they have a video uploaded by Keller Williams University KWU entitled "FSBO's and Expired Listings – Newscast" and also have a video by Amber Yturralde entitled "FSBO and Expired Listings Extreme Training Camp with Kevin Ward."[10] [11] They have another video entitled "Real Estate Training / Scripts for FSBO and Expired Listings / Real Estate Training" with Arthur Mariroso training a class of Keller Williams agents on that topic.[12]

21.     On KWConnect they have another video called "Expired Listings 101 with Rachel Adams Lee" who educates the viewer how to talk to an expired listing on the phone to make a listing appointment.[13]

22.     On another video provided on KWConnect called "Expired Listings: Go Pro" Paul Campanaro a professional real estate trainer teaches Keller Williams agents how to make Expired Listing calls.[14]

---

[9] https://www.kwconnect.com/search?q=expired+script and https://www.youtube.com/watch?v=Fw9cBSJoWDw
[10] https://www.kwconnect.com/search?q=%22expired+listings%22
[11] https://www.youtube.com/watch?v=h1AS9REDg7Q
[12] https://www.kwconnect.com/search?q=%22expired+listings%22
[13] https://www.kwconnect.com/search?q=%22expired+listings%22 and https://www.youtube.com/watch?v=E3kFVdHzxKc
[14] https://www.youtube.com/watch?v=Xt9I3RmCBks and https://www.kwconnect.com/search?q=%22expired+listings%22

23.     Keller Williams also maintains an Approved Vendor program that includes Approved Vendors who mine consumer data from expired MLS listings so that agents can call them to solicit them to be their real estate agent.  Keller Williams gives Approved Vendors its "trusted" seal of approval with corresponding "[a]ccess to more than 150,000 Keller Williams associates and more than 750 franchises throughout the United States and Canada."[15]   One of Keller Williams' primary approved vendors is Landvoice, a company like RedX that sells agents lists of real estate leads, researches telephone numbers associated with the leads, and provides agents with an online automatic telephone dialing system which allows them to load the lists of leads using a sequential number generator and then dial them.

**Keller Williams Promotes RedX to Its Agents to Generate Expired Listing Leads**

24.     RedX is a service that provides among other things, leads to real estate agents of personal phone numbers of property owners whose property listing on the MLS expired. RedX does this by using skip tracing technology to lookup property listings from the MLS, locate the property owners of those listings, and generate personal phone numbers of those property owners who they sell to real estate agents along with access to a dialer to call those agents, many of which are registered on the Do Not Call registry.

25.     Defendant Keller Williams ratifies this conduct of using services like RedX to call phone numbers of property owners of expired listings.

26.     For example, on Keller Williams' own blog they acknowledge realtors' use of RedX:

**Expired Prospecting**

"When it came time to dial for expired dollars, the team got creative, looking up everyone who expired between the years of 2007 and 2011. The list returned 100,000 homes, which begged the next question: how do you crank through that many phone calls in just 90 days? Ultimately, they

---

[15] See Keller Williams Approved Vendors page, http://www.kw.com/kw/vendor-network.html, and see also the YouTube Video at the bottom in which KW agents talk about the trust they have when vendors are considered Approved Vendors (last accessed March 28, 2018).

decided to leverage <u>Red X</u> and <u>MOJO Powerdialer</u>,purchased BOOM headphones, and added more phone lines and the ability to screen incoming calls."[16]

27.　　In Keller Williams' magazine "Outfront" – the editorial arm of Keller Williams which is "committed to bringing you an in-depth look at the business, lives and success strategies of our top agents from around the world," several articles in the magazine credit RedX to Keller Williams realtors' success. "With so many outbound calls made daily, they use RedX and Mojo to power-dial and auto-dial so that they can decrease their downtime and increase their productivity." [17]

28.　　RedX, a similar service as Landvoice, was the company that provided one of the Keller Williams realtors the phone number used to call Plaintiff in this case.

## Keller Williams and Lead Services Like Landvoice

29.　　Landvoice's leads are in the first instance aggregated from expired listings, for-sale-by-owner properties, old expired leads, and pre-foreclosure leads.  Landvoice then uses state-of-the-art technology to "take additional steps to deliver the highest quality and quantity of owner contact information including cell phone numbers."[18]  Landvoice generates multiple phone numbers (including cell phone numbers and other numbers listed on the DNC) for each lead to ensure that the agent calling has the best chance of reaching the client.[19]  (This type of lead gathering information has been commonly used by debt collectors for instance who use skip-tracing to track every possible contact related to a particular individual.)

30.　　Landvoice's service includes the automatic loading of the Landvoice-generated leads lists, using a sequential number generator, into a "Power Dialer," an automatic telephone

---

[16] https://blog.kw.com/2013/10/25/craig-reger-90-listings-in-90-days-method-will-transform-your-business/
[17] https://issuu.com/kellerwilliamsrealtyinc/docs/kw_outfront_11.3.2014_webres

[18] https://www.linkedin.com/company/landvoice/
[19] Landvoice is owned by Domega, Inc., "the world leader of data aggregation and lead generation [which uses] hi-tech creative systems to give clients hard-to-get data and leads."  *See* https://www.linkedin.com/company/domega-inc-/

dialing system that "dial[s] leads" at a rate of 80 to 300 per hour and delivers a pre-recorded message if calls are not answered:[20] [21]



[20] Advertisement available at, https://landvoice.com/power-dialer/.

[21] Landvoice's lists of leads are also intended by Landvoice to be easily integrated and loaded to any autodialer, not just the one provided as part of Landvoice's service.  *See* blog available at, http://activerain.com/blogsview/1170875/mojo-and-landvoice--we-play-well-together---.

31.     The problem with this whole system is that Landvoice is providing multiple phone numbers (including cell phone numbers and numbers listed on the DNC) along with access to an autodialer system to agents, and neither Landvoice nor the agents have consent to call these consumers' phone numbers using an autodialer in clear violation of the TCPA. In fact, Landvoice has expressly acknowledged in response to an Atlanta Keller Williams' agent's complaints, that the leads it generates include numbers on the DNC and that, as part of its autodialer, it does not provide users a mechanism to filter out numbers on the DNC:[22, 23] ‹



[22] Tweet at, https://twitter.com/amandakayleign, and reply at, https://twitter.com/Landvoice/status/948623975852138496; *see also* http://www.kw.com/kw/agent/amanda-kay.

[23] Consumers' complaints to Landvoice regarding calls to numbers on the DNC are available at, https://www.bbb.org/utah/business-reviews/sales-lead-generation/landvoice-data-llc-in-orem-ut-22168844/reviews-and-complaints?section=complaints.

32.     Notwithstanding, Keller Williams directs its franchisees and their agents to use the Landvoice system, which by definition knowingly promotes their violating the TCPA.[24]

33.     For example, Keller Williams includes Landvoice as a regular participant in its annual Mega Camp training program.[25]   And, as part of Mega Camp, Keller Williams "team[s] with" Landvoice to promote widespread access to Landvoice's leads and autodialer system:[26]



34.     Similarly, Landvoice is a regular participant and presenter regarding its lead generating and autodialing services at Keller Williams Family Reunion, a yearly event with

---

[24] In fact, Keller Williams posted a YouTube video inaccurately advising agents that they may call numbers that are on the DNC, explaining: "*If for sale by owner and on the DNC, you may call them anyway.*" Video available at, https://www.youtube.com/watch?v=UVBfyPfDDjQ

[25] See video of Landvoice at Megacamp at, https://www.youtube.com/watch?v=ICHXd07b8tc (last accessed March 28, 2016).

[26] The deal is available at, https://www.landvoicedata.com/kw/ (last accessed March 28, 2016).

over 10,000 attendees, which features Keller Williams executives and master faculty leading educational sessions covering sales skills, leadership skills, and technology training.[27, 28, 29, 30]

35.     In addition to endorsing Landvoice's presentation at Family Reunion, Keller Williams' own trainers from Keller Williams University – which "provides an industry-leading curriculum addressing every aspect of success in real estate"[31]  – direct Keller Williams agents at Family Reunion, and as part of other Keller Williams University training programs, to purchase lead lists and call them using an autodialer:



36.     Other Keller Williams programs and materials similarly direct franchisees to use an autodialer to call leads.  For example, Keller Williams' training manual for agents called Three L Blueprints, which Landvoice publishes on its website, makes clear to  agents that using an autodialer is required to become the "highest-performing associate[]."[32]

---

[27] https://trainingmag.com/trgmag-article/keller-williams-home-no-1
[28] Instagram post with the caption "…#Landvoice at #KWFR2018" [KWFR is Keller Williams Family Reunion] available at, https://www.instagram.com/p/BfcEDa9HwWD/, and photo of the Landvoice table available at, https://i.pinimg.com/736x/e6/85/6f/e6856f4daa3bd8984a089588fdf381b7--family-reunions-orlando-florida.jpg.
[29] https://trainingmag.com/trgmag-article/keller-williams-home-no-1
[30] Instagram post with the caption "…#Landvoice at #KWFR2018" [KWFR is Keller Williams Family Reunion] available at, https://www.instagram.com/p/BfcEDa9HwWD/, and photo of the Landvoice table available at, https://i.pinimg.com/736x/e6/85/6f/e6856f4daa3bd8984a089588fdf381b7--family-reunions-orlando-florida.jpg.
[31] As stated on the KW Education webpage, http://www.kw.com/kw/education.html.
[32] Full training manual available here, https://landvoice.com/wp-content/uploads/2017/05/KW_Three_L_Blueprints.pdf.

37.     In fact, Keller Williams' marketing plan for franchisees – involving purchasing lists of leads and autodialing them – is reinforced at the highest levels of Keller Williams' organization.  Dianna Kokoszka, CEO of KW MAPS Coaching at Keller Williams, who co-teaches training classes with Keller Williams founder Gary Keller, developed an entire training program called BOLD (Business Objective: A Life by Design) centered around obtaining Landvoice generated leads and autodialing them, which Keller Williams claims "has helped **tens of thousands**" of its agents.  In fact, Keller Williams agents who sign up for BOLD are given a free trial account with Landvoice:[33]



38.     Keller Williams coaching and training programs and materials are an integral part of the Keller Williams franchise system, and are the means by which Keller Williams controls the manner in which franchisees market for new listings – i.e., buying lists of leads and autodialing the associated telephone numbers without consent and, as a result of known

---

[33] https://landvoice.com/bold/welcome/

deficiencies in Landvoice's products, oftentimes notwithstanding their being registered on the DNC.

39.     RedX is a competitor service of Landvoice which provides the phone numbers of leads whose properties have expired on the MLS.

40.     The problem with services like Landvoice and RedX are that by their nature agents are calling consumers who did not ask to be called and when multiple realtors subscribe to these services, property owners are bombarded with multiple calls from real estate agents soliciting them to relist their property with them.

41.     Consumers are fed up with the harassment of receiving these calls that they did not consent to.

42.     Not surprisingly, companies that sell leads acknowledge consumers' desire not to receive such calls.  RedX for instance, has a video entitled "Expired Listing Objection Handlers: You're the 73rd Agent to Call Me" which trains the agents who use their service how to handle angry property owners who are being bombarded with expired listing solicitation calls.[34]

RedX has produced another video entitled "How to Deal with Bad Phone Numbers When Prospecting" which basically admits that some of the phone numbers they generate for property owners of expired listings is not accurate which leads to real estate agents bombarding consumers who do not have even an expired property listing and how to deal with those consumers.[35]

---

[34] https://www.youtube.com/watch?v=bhYi-1EapIE
[35] https://www.youtube.com/watch?v=EzNMnjnMcTo

## PLAINTIFF ST JOHN'S ALLEGATIONS

**Keller Williams Directed and/or Ratified their Realtors' Repeated Calls to Plaintiff St John's Cell Phone Number Without Her Consent, Despite It Being Listed on the DNC**

43.     Plaintiff St John registered her cell phone on the DNC on April 27, 2016.

44.     Plaintiff St John's cell phone is not associated with a business and is used for personal use only.

45.     Plaintiff St John had her home listed for sale with an agent on the MLS. The property was listed with Home Bankers Realty, LLC. Home Bankers Realty is not affiliated with Keller Williams.

46.     In addition, Plaintiff St John's contact information was not provided anywhere in the property listing that was published on the MLS for other realtors, but rather only listed her agent's phone number.

47.     Plaintiff St John's property expired on the MLS on July 2, 2019.

48.     Plaintiff St John was bombarded with phone calls from Keller Williams realtors beginning from the date her property expired on the MLS.

49.     Not surprisingly, this is one of the advertised features of Landvoice and its competitors like Redx to harvest phone numbers of property owners who have an expired listing on the MLS and to provide a dialer to call them.

50.     Of course, the problem with this is that Plaintiff St John never gave Keller Williams or its realtors consent to be called on her private cell phone number that is also registered on the DNC.

51.     The following chart provides a breakdown of the calls/texts Plaintiff St John received from Keller Williams realtors:

**Keller Williams Classic:**
- July 2, 2019 using phone number 407-353-7706 at 7:48 AM
- July 2, 2019 using phone number 407-421-9653 at 7:52 AM

**Keller Williams Advantage III:**
- July 2, 2019 using phone number 321-283-6031 at 8:02 AM
- July 2, 2019 using phone number 407-603-5210 at 8:10 AM
- July 2, 2019 using phone number 407-603-3415 at 8:21 AM
- July 2, 2019 using phone number 321-283-6031 at 8:31 AM
- July 2, 2019 using phone number 407-314-8567 at 8:34 AM
- July 2, 2019 using phone number 407-456-3330 at 9:03 AM
- July 3, 2019 using phone number 407-228-3432 at 2:57 PM
- July 8, 2019 using phone number 407-204-9011 at 4:05 PM
- July 9, 2019 using phone number 407-603-5210 at 8:22 AM

**Keller Williams Classic II:**
- July 3, 2019 using phone number 407-927-9856 at 10:00 AM
- July 3, 2019 text message from phone number 407-927-9856 at 10:03 AM
- July 11, 2019 using phone number 407-535-1300 at 7:01 PM
- July 20, 2019 using phone number 407-476-3660 at 11:10 AM

**Keller Williams At The Parks**
- July 2, 2019 using phone number 407-408-3072 at 8:32 AM

**Other Keller Williams Calls:**
- July 2, 2019 using phone number 321-405-2444 at 8:20 AM
- July 2, 2019 using phone number 407-204-9011 at 8:28 AM
- July 2, 2019 using phone number 407-749-1888 at 8:30 AM
- July 2, 2019 using phone number 407-801-8929 at 8:57 AM
- July 2, 2019 using phone number 386-204-4094 at 9:13 AM

52.     The purpose of these calls was to solicit Plaintiff St John to use one of the Keller

Williams realtor's services to re-list the property that had expired on the MLS.

53.     Plaintiff St John received a prerecorded call on her cell phone from a Keller

Williams realtor on July 2, 2019 at 8:21 AM using phone number 407-603-3415 stating:

"Hey, this is Steven with Estrada Real Estate. I know you're probably getting
bombarded by a lot of realtors… getting a lot of calls from different agents. Just wanted
to give you a call and give you some information on the shifting markets. And, how
specifically how it's affecting why your house didn't sell. You know we specialize here
in the area. We also make cash offers on the spot and you have to may, may or may not
work for you, but depending on what you need I really see an opportunity for you to get

15

this house officially sold in about 30 days. Maybe 20-30 days, but give me a call back I'd love to have a little chat with you. My number's 407-970-5988. You can call me from this number or shoot me over a text."

54.      On July 3, 2019 at 2:57 PM, Plaintiff St John received a second prerecorded

voicemail from a Keller Williams agent, this time using phone number 407-228-3432 stating:

"Hi, this is Emily with Estrada Real Estate Group and I'm calling because as I'm sure you figured out, your home has come off the market. I'm calling to see when you plan on hiring the right agent to sell your home, or if you will be open to a fair cash offer. Please call or text me at 407-706-9777. Thank you and I look forward to speaking with you."

55.      Plaintiff St John answered many of the calls that she received. For example, on

July 2, 2019 at 8:28 AM, Plaintiff St John answered a call from 407-204-9011. The realtor that

she spoke to identified herself as being Rene from Keller Williams.

56.      On July 2, 2019 at 8:30 AM, Plaintiff St John answered a call from 407-749-

1888. The realtor that she spoke to identified himself as being Mark from Keller Williams.

57.      On July 2, 2019 at 8:32 AM, Plaintiff St John answered a call from 407-408-

3072. The realtor that she spoke to identified himself as being Bryan from Keller Williams.

58.      Plaintiff St John noted that a number of the realtor she spoke to indicated the

fact that they were calling from, or on behalf of, Keller Williams.

59.      When St John answered the calls, she asked the realtors that she spoke to how

they got her contact information. St John was told by a few of the realtors that they were using

a lead generating system that indicated the fact that St John's property listing had expired and

whether they were interested in re-listing the property with them.

60.      Plaintiff St John told each realtor that she spoke to that she wanted the calls to

stop and was no longer looking to sell her home. Despite her stop requests, she was bombarded

with calls from Keller Williams realtors.

61.      On July 3, 2019 at 10:00 AM, Plaintiff St John received a call from a Keller

Williams realtor using phone number 407-927-9856. St John made it clear to the realtor that

she was not interested in selling her home. Despite this fact, the realtor sent a text message to St John on July 3, 2019 at 10:03 AM:



62.     As is shown in the image above, the Keller Williams realtor identified herself as being from Keller Williams Realty only and provided her Keller Williams email. On information and belief, the dialer the realtor used to make the call was preconfigured to automatically send a text message to any recipient of a call that answered the call.

63.     On July 11, 2019 at 7:01 PM, Plaintiff St John received an autodialed call to her cell phone from John Cunningham, a Keller Williams Classic Realty realtor using phone number 407-535-1300. When St John answered the call, she had to say hello twice and then wait before Cunningham came on the line, indicating the use of a dialer.

64.     Cunningham began by introducing himself as John. Plaintiff St John asked which company Cunningham was with and he replied "Keller Williams." Plaintiff St John then asked how he got her information. Cunningham said that he downloaded St John's contact details using a system. When Plaintiff St John asked which system Cunningham was using, he replied, "I use Landvoice, but there's RedX out there."

65.     On July 20, 2019 at 11:10 AM, Plaintiff St John received an autodialed call from a Keller Williams realtor on her cell phone using phone number 407-476-3660. When St John answered the call, she had to say hello twice and then wait before the agent came on the line, indicating the use of a dialer.

66.     When the realtor came on the line, he introduced himself as Franklin. The agent then told Plaintiff St John that he is with Keller Williams and was calling about Plaintiff St John's expired property listing. St John told the realtor not to call her again.

67.     Plaintiff St John has never provided her cellular phone number to Keller Williams or any of its realtors.

### PLAINTIFF PENUELA'S ALLEGATIONS

**Keller Williams Directed and/or Ratified their Realtors' Repeated Calls to Plaintiff Penuela's Cell Phone Number Without His Consent, Despite It Being Listed on the DNC**

68.     Plaintiff Penuela registered his cell phone on the DNC on February 27, 2007.

69.     Plaintiff Penuela's cell phone is not associated with a business and is used for personal use only.

70.     Plaintiff Penuela had 2 properties listed for sale, but the listings expired on June 1, 2019. The properties were both listed with Home Bankers Realty, LLC. Home Bankers Realty is not affiliated with Keller Williams.

71.     In addition, Plaintiff Penuela's contact information was not provided anywhere in the property listings.

72.     When Plaintiff Penuela's listings expired without a sale, multiple Keller Williams realtors called Plaintiff Penuela in order to solicit him to re-list his properties with them.

73.     The following chart provides a breakdown of the multiple Keller Williams realtors which called his private cell phone number to solicit him without his consent and despite his number being registered on the DNC:

**Keller Williams Advantage III:**
- June 1, 2019 using phone number 407-603-5210 at 10:00 AM
- June 1, 2019 text message using phone number 407-461-2551
- June 4, 2019 using phone number 407-276-6087 at 11:06 AM

**Keller Williams Classic II:**
- June 3, 2019 using phone number 407-476-3660 at 9:03 AM
- June 4, 2019 using phone number 407-476-3660 at 8:31 AM
- June 4, 2019 using phone number 407-927-9856 at 9:01 AM

**Keller Williams At The Parks:**
- June 4, 2019 using phone number 407-637-1300 at 1:29 PM
- June 5, 2019 using phone number 407-810-0137 at 9:44 AM

74.     Plaintiff Penuela received a significant number of additional calls, many of which were placed by Keller Williams realtors. Penuela tried to keep track of the incoming calls, but there were simply too many of them.

75.     On June 1, 2019, Plaintiff Penuela received an autodialed text message from Tim Torres, a Keller Williams realtor using phone number 407-461-2551:



76.     On information and belief, this text message is autodialed since it is generic in nature and not specifically addressing Plaintiff Penuela. It would also take a very long time for this agent to type out this text message to each prospective lead so it's likely this text message was sent in bulk.

77.     Plaintiff Penuela never consented to receiving solicitation calls and/or text messages from Keller Williams or its realtors.

78.     The unauthorized telephone calls made by Keller Williams' realtors, as alleged herein, have harmed Plaintiff St John and Plaintiff Penuela in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of their phones, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phones.

79.     Seeking redress for these injuries, Plaintiff St John and Plaintiff Penuela, on behalf of themselves and Classes of similarly situated individuals, bring suit under the

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed calls and text messages to cellular telephones, unsolicited calls using a pre-recorded voice, and unsolicited calls to telephone numbers registered on the DNC.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiffs' TCPA Claims

80.     Plaintiff St John and Plaintiff Penuela bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following four Classes:

**Prerecorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or a realtor acting on behalf of Defendant) called (2) using a prerecorded voice message, and (3) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.

**Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or a realtor acting on behalf of Defendant) called or texted, (2) on the person's cellular telephone, (3) using similar equipment as used to call or text Plaintiffs, and (4) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call or text Plaintiffs, or (b) they did not obtain prior express written consent.

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or a realtor acting on behalf of Defendant) called and/or texted more than one time; (2) within any 12-month period (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.

**Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or agents acting on behalf of Defendant) called and/or texted more than one time (2) within any 12-month period (3) for substantially the same reason Defendant called and/or texted Plaintiff St John.

81.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the Class definitions following appropriate discovery.

82.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

83.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff St John and Plaintiff Penuela and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Defendant's conduct constitutes a violation of the TCPA;

(b)     whether Defendant placed prerecorded voice message calls to Plaintiff St John and members of the Pre-Recorded Class without first obtaining consent to make the calls;

(c)     whether Defendant utilized an automatic telephone dialing system to make calls and/or send text messages to Plaintiffs and the members of the Autodialed No Consent Class;

(d)     whether Defendant systematically made multiple telephone calls to Plaintiff St John and Plaintiff Penuela, and consumers whose telephone numbers were registered with the National Do Not Call Registry;

(e)     whether Defendant placed calls to Plaintiff St John and members of the Internal
Do Not Call Class after such persons requested to no longer be called;

(f)     whether members of the Classes are entitled to treble damages based on the
willfulness of Defendant's conduct.

84.     **Adequate Representation**: Plaintiff St John and Plaintiff Penuela will fairly
and adequately represent and protect the interests of the Classes, and have retained counsel
competent and experienced in class actions. Plaintiff St John and Plaintiff Penuela have no
interests antagonistic to those of the Classes, and Defendant has no defenses unique to either
Plaintiff. Plaintiff St John and Plaintiff Penuela and their counsel are committed to vigorously
prosecuting this action on behalf of the members of the Classes, and have the financial
resources to do so. Neither Plaintiff St John and Plaintiff Penuela nor their counsel have any
interest adverse to the Classes.

85.     **Appropriateness**: This class action is also appropriate for certification because
Defendant has acted or refused to act on grounds generally applicable to the Classes and as a
whole, thereby requiring the Court's imposition of uniform relief to ensure compatible
standards of conduct toward the members of the Classes and making final class-wide injunctive
relief appropriate. Defendant's business practices apply to and affect the members of the
Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct
with respect to the Classes as wholes, not on facts or law applicable only to either Plaintiff.
Additionally, the damages suffered by individual members of the Classes will likely be small
relative to the burden and expense of individual prosecution of the complex litigation
necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of
the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A
class action provides the benefits of single adjudication, economies of scale, and
comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff St John and the Prerecorded No Consent Class)**

86.     Plaintiff St John repeats and realleges paragraphs 1 through 85 of this Complaint and incorporates them by reference.

87.     Defendant and/or its agents transmitted unwanted solicitation telephone calls to Plaintiff St John and the other members of the Prerecorded No Consent Class using a prerecorded voice message.

88.     These prerecorded voice calls were made *en masse* without the prior express written consent of the Plaintiff St John and the other members of the Prerecorded No Consent Class.

89.     Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). As a result of Defendant's conduct, Plaintiff St John and the other members of the Prerecorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff St John, Plaintiff Penuela and**
**the Autodialed No Consent Class)**

90.     Plaintiff St John and Plaintiff Penuela repeat and reallege paragraphs 1 through 85 of this Complaint and incorporate them by reference.

91.     Defendant and/or its agents made unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiff St John, Plaintiff Penuela and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

92.     These solicitation telephone calls were made *en masse* without the prior express written consent of the Plaintiff St John, Plaintiff Penuela and the other members of the Autodialed No Consent Class.

93.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff St John, Plaintiff Penuela and the other members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### THIRD CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Do Not Call Registry Class)**

94.     Plaintiff St John and Plaintiff Penuela repeat and reallege paragraphs 1 through 85 of this Complaint and incorporate them by reference.

95.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

96.     47 C.F.R. § 64.1200(e) provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[36]

97.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or

---

[36] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

98.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff St John, Plaintiff Penuela and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

99.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff St John, Plaintiff Penuela and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

100.    As a result of Defendant's conduct as alleged herein, Plaintiff St John, Plaintiff Penuela and the Do Not Call Registry Class are each entitled to a up to $1,500 in damages for each violation.

**FOURTH CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff St John and the Internal Do Not Call Class)**

101.    Plaintiff St John repeats and realleges paragraphs 1 through 85 of this Complaint and incorporates them by reference.

102.    Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

103. Defendant or its agent made marketing calls to Plaintiff St John and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

104. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

105. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff St John and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff St John and Plaintiff Penuela, individually and on behalf of the Classes, pray for the following relief:

106. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff St John and Plaintiff Penuela as the representatives of the Classes; and appointing their attorneys as Class Counsel;

107. An award of actual and/or statutory damages and costs;

108. An order declaring that Defendant's actions, as set out above, violate the TCPA;

109. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

110. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff St John and Plaintiff Penuela request a jury trial.


Dated: July 22, 2019

*/s/ Avi Kaufman*
Avi R. Kaufman (FL Bar No. 84382)
kaufman@kaufmanpa.com
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Trial Counsel*

Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427

*Attorneys for Plaintiffs and the putative Classes*